AO 106 (Rev. 04/10) Application for a Search Warrant

HH/CS

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| | | |
|---|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Apple IPhone 8 recovered from the residence of Grant<br>Michalski, 221 N. Front Street, #105, Columbus, OH, and<br>currently held in FBI secure evidence storage, 425 W.<br>Nationwide Blvd. Columbus, OH | )<br>)<br>)<br>)<br>)<br>)<br>) | Case No.  2:18-mj-707 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT B INCORPORATED HEREIN BY REFERENCE

located in the _____ Southern _____ District of _____ Ohio _____ , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT A INCORPORATED HEREIN BY REFERENCE

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 2252 and 2252A | Possession, distribution, and/or receipt of child pornography and/or visual depictions of minors engaged in sexually explicit conduct |
| 18 U.S.C. 2422(b) | Coercion/enticement of a minor to engage in illegal sexual activity, or attempt to do so. |

The application is based on these facts:

See attached affidavit incorporated herein by reference

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

David A. Knight, SA FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  9/19/2018

*Judge's signature*

City and state:  Columbus, Ohio

Elizabeth Preston Deavers, U.S. Magistrate Judge
*Printed name and title*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| In the Matter of the Search of: | ) | No. |
| | ) | |
| Apple IPhone 8 recovered from the residence of | ) | Magistrate Judge Deavers |
| Grant Michalski, 221 N. Front Street, #105, Columbus, | ) | |
| OH, and currently held in FBI secure storage | ) | |
| 425 W. Nationwide Blvd, Columbus, OH 43215 | ) | |

<u>**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**</u>

I, David A. Knight, a Special Agent with the Federal Bureau of Investigation (FBI), being duly sworn, hereby depose and state:

## I. <u>EDUCATION TRAINING AND EXPERIENCE</u>

1.      I am a Special Agent with the FBI assigned to the Cincinnati Division and I have been a Special Agent since August 2007.  I am currently assigned to the FBI Child Exploitation Task Force, investigating matters involving the online exploitation of children and child pornography. Prior to joining the FBI, I was a Columbus, Ohio Police Officer for 8 years, also working on the FBI Child Exploitation Task Force. I have made arrests and have executed search warrants pertaining to these types of investigations.

2.      During my career as a police officer and Special Agent, I have participated in various investigations involving computer-related offenses and have executed numerous search warrants, including those involving searches and seizures of computers, digital media, software, and electronically stored information.  I have received both formal and informal training in the detection and investigation of computer-related offenses.  As part of my duties as a Special Agent, I investigate criminal child exploitation and child pornography violations, including the illegal production, distribution, transmission, receipt, and possession of child pornography, in violation of 18 U.S.C. §§ 2251, 2252, 2252A and 2422.

3.      As a Special Agent, I am authorized to investigate violations of the laws of the United States and to execute warrants issued under the authority of the United States.

1

## II. PURPOSE OF THE AFFIDAVIT

4.      The facts set forth below are based upon my own personal observations, investigative reports, and information provided to me by other subjects and witnesses. I have not included in this affidavit all information known by me relating to the investigation. I have only set forth facts believed to be necessary to establish probable cause in support of a search warrant for the following digital media; **Apple IPhone X with model # A1865 and an unknown serial number #** (hereinafter referred to as "the SUBJECT MEDIA"). The SUBJECT MEDIA was seized during the execution of a search warrant at the residence of Grant I. Michalski, 221 N. Front Street, Columbus, Ohio 43215, and is currently held at FBI secure storage facility, 425 W. Nationwide Blvd, Columbus, Ohio 43215. I have not withheld any evidence or information that would negate probable cause.

5.      The SUBJECT MEDIA to be searched is more particularly described in Attachment B, for the items specified in Attachment A, which items constitute instrumentalities, fruits, and evidence of violations of 18 U.S.C. §§ 2252, 2252A, and 2422(b) – the distribution, transmission, receipt, and/or possession of child pornography and the coercion or enticement of a minor to engage in illegal sexual activity.

## III. APPLICABLE STATUTES AND DEFINITIONS

6.      Title 18 United States Code § 2252 makes it a crime to knowingly transport, ship, receive, distribute, sell or possess in interstate commerce any visual depiction involving the use of a minor engaging in sexually explicit conduct.

7.      Title 18 United States Code § 2252A(a)(2) makes it a crime to knowingly receive or distribute any child pornography that has been mailed, or using any means or facility of interstate commerce.

8.      Title 18 USC § 2422(b) makes it a federal crime for any person to knowingly use a means of interstate commerce to persuade, induce, entice, or coerce or attempt to persuade, induce, entice or coerce, any individual who has not attained the age of 18 years, to engage in any sexual activity for which any person may be charged with a crime.

9.      Pursuant to Ohio Revised Code § 2907.02, it is a felony under the laws of Ohio for any person to engage in sexual conduct with another, who is not the spouse of the offender, when the other person is less than 13 years of age, regardless of whether the offender knows the age of the other person.  Sexual conduct is defined pursuant to O.R.C. § 2907.01 to include vaginal, anal and oral intercourse, and any penetration by any body part or other object into the vaginal or anal opening of another.

10.     As it used in 18 U.S.C. § 2252, the term "sexually explicit conduct" is defined in 18 U.S.C. § 2256(2)(A) as: actual or simulated: sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; bestiality; masturbation; sadistic or masochistic abuse; or lascivious exhibition of the genitals or pubic area of any person.

11.     As it is used in 18 U.S.C. § 2252A(a)(2), the term "child pornography"[1] is defined in 18 U.S.C. § 2256(8) as: any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where: (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; (B) such visual depiction is a digital image, computer image, or computer generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

12.     The term "sexually explicit conduct" has the same meaning in § 2252A as in § 2252, except that for the definition of child pornography contained in § 2256(8)(B), "sexually explicit conduct" also has the meaning contained in § 2256(2)(B): (a) graphic sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex, or lascivious simulated sexual intercourse where the genitals, breast, or pubic area of any person is exhibited; (b) graphic or lascivious simulated; (i) bestiality; (ii)

---

1 The term child pornography is used throughout this affidavit.  All references to this term in this affidavit include both visual depictions of minors engaged in sexually explicit conduct as referenced in 18 U.S.C. § 2252 and child pornography as defined in 18 U.S.C. § 2256(8).

masturbation; (iii) sadistic or masochistic abuse; or (c) graphic or simulated lascivious exhibition of the genitals or pubic area of any person.

13.    The term "minor", as used herein, is defined pursuant to Title 18, United States Code, Section 2256(1) as "any person under the age of eighteen years."

14.    The term "graphic," as used in the definition of sexually explicit conduct contained in 18 U.S.C. § 2256(2)(B), is defined pursuant to 18 U.S.C. § 2256(10) to mean "that a viewer can observe any part of the genitals or pubic area of any depicted person or animal during any part of the time that the sexually explicit conduct is being depicted."

15.    The term "visual depiction," as used herein, is defined pursuant to T18 U.S.C. § 2256(5) to "include undeveloped film and videotape, and data stored on computer disk or by electronic means which is capable of conversion into a visual image."

16.    The term "computer"[2] is defined in 18 U.S.C. § 1030(e)(1) as an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

## IV.   BACKGROUND REGARDING MOBILE PHONES AND THE INTERNET

17.    The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

18.    Based on my training and experience, I use the following terms to convey the following meanings:

        a.   Wireless telephone: A wireless telephone (or mobile telephone or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and

---

[2] The term "computer" is used throughout this affidavit to refer not only to traditional laptop and desktop computers, but also to internet-capable devices such as cellular phones and tablets. Where the capabilities of these devices differ from that of a traditional computer, they are discussed separately and distinctly.

4

from the phone. In addition to enabling voice communications, modern wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records of the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

19. Based on my training, experience, and observation of the device, I know that the SUBJECT MEDIA has capabilities that allow it to serve as a mini handheld computer with the capability of accessing the internet, and performing the functions of an electronic storage device, wireless telephone, digital camera, digital video recorder, portable media player and a GPS

navigation device. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device, where the device has been, and what messages were sent to or from the device via text message, e-mail or a chat application.

20.     I know from my training and experience that mobile phones and electronic files ("objects") may be important to criminal investigations in two distinct ways: (1) the objects themselves may be evidence, instrumentalities, or fruits of crime, and/or (2) the objects may be used as storage devices that contain contraband, evidence, instrumentalities, or fruits of the crime in the form of electronic data. Rule 41 of the Federal Rules of Criminal Procedure permits the government to search for and seize mobile phones and electronic files that are evidence of a crime, contraband, instrumentalities of crime and/or fruits of crime.

21.     Digital or electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive or other digital device, deleted, or viewed via the Internet, and can be stored for years at little or no cost. Even when such files have been deleted, they can be recovered months or even years later using readily available forensic tools. When a person "deletes" a file from a digital device, the data contained in the files does not actually disappear; rather the data remains on the device until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space - that is, space on a storage medium that is not allocated to a set block of storage space – for long periods of time before they are overwritten.

22.     Computers, tablets and smart/cellular phones are capable of storing and displaying photographs. The creation of computerized or digital photographs can be accomplished with several methods, including using a "scanner," which is an optical device that can digitize a photograph. Another method is to simply take a photograph using a digital camera or cellular phone with an onboard digital camera, which is very similar to a regular camera except that it captures the image in a computerized format instead of onto film. Such computerized photograph files, or image files, can be known by several file names including AGIF@ (Graphic Interchange Format) files, or "JPG/JPEG" (Joint Photographic Experts Group) files.

23.     Computers, tablets and smart/cellular phones are also capable of storing and displaying movies of varying lengths. The creation of digital movies can be accomplished with several methods, including using a digital video camera (which is very similar to a regular video camera except that it captures the image in a digital format which can be transferred onto the

computer). Such computerized movie files, or video files, can be known by several file names including "MPG/MPEG" (Moving Pictures Experts Group) files.

24.     The Internet is a worldwide network of computer systems operated by governmental entities, corporations, and universities. With a computer or mobile device connected to the Internet, an individual user can make electronic contact with millions of other computer or mobile device users around the world. Many individual computer/mobile device users and businesses obtain their access to the Internet through businesses known as Internet Service Providers ("ISPs"). ISPs provide their customers with access to the Internet using wired telecommunications lines, wireless signals commonly known as Wi-Fi, and/or cellular service; provide Internet e-mail accounts that allow users to communicate with other Internet users by sending and receiving electronic messages through the ISPs' servers or cellular network; remotely store electronic files on their customers' behalf; and may provide other services unique to each particular ISP. ISPs maintain records pertaining to the individuals or companies that have subscriber accounts with the ISP. Those records may include identifying and billing information, account access information in the form of log files, e-mail transaction information, posting information, account application information, Internet Protocol ("IP") addresses[3] and other information both in computer data format and in written record format.

25.     A growing phenomenon related to smartphones and other mobile computing devices is the use of mobile applications. Mobile applications, also referred to as "apps," are small, specialized programs downloaded onto mobile devices that enable users to perform a variety of functions, including engaging in online chat, reading a book, or playing a game. Examples of such "apps" include KIK messenger service, Snapchat, and Instagram. KIK messenger, for example, is an "app" which allows individuals to chat securely by themselves or in a group, easily allowing the users to communicate while sharing videos and images. KIK messenger also has a short retention time for chats logs and allows a user to destroy all evidence from a chat by simply deleting their KIK messenger account.

---

3 The IP address is a unique numeric address used by computers on the Internet. An IP address looks like a series of four numbers, each in the range of 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most ISPs control a range of IP addresses. When mobile devices connect to the Internet they are assigned an IP address either by the residential/commercial WiFi ISP or the cellular ISP. The IP address assignments are controlled by the respective provider.

26.     Computers and mobile computing devices have the capability to store data in digital form. Cellular "smart" phones are essentially mini computers that can store anywhere from 16GB to 256GB of data. These phones have the capability to store hundreds of thousands of pieces of information which includes various forms of communication, including chats, over various applications and text messages. Criminals can mislabel or hide files and directories, encode communications, attempt to delete files to evade detection, or take other steps to frustrate law enforcement searches. In light of these difficulties, your affiant requests permission to use whatever data analysis techniques appear necessary to locate and retrieve the evidence described in Attachment A.

## V.  SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER AND MOBILE COMPUTING SYSTEMS

27.     Searches and seizures of evidence from computers and mobile computing devices commonly require agents to download or copy information from the computers and their components, or seize most or all computer items (computer hardware, computer software, and computer related documentation) to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following:

a. Computer storage devices (like hard disks, diskettes, tapes, laser disks, magneto opticals, and others) can store the equivalent of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names. This requires searching authorities to examine all the stored data to determine whether it is included in the warrant. This sorting process can take days or weeks, depending on the volume of data stored; and

b. Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of a computer system is an exacting scientific procedure which is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled

environment of a laboratory is essential to its complete and accurate analysis.

28.     In order to fully retrieve data from a computer system, the analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software, which may have been used to create the data (whether stored on hard drives or on external media).

## VI.  SEARCH METHODOLOGY TO BE EMPLOYED

29.     The search procedure of electronic data contained in computer hardware, computer software, and/or memory storage devices may include the following techniques (the following is a non-exclusive list, as other search procedures may be used):

a. Examination of all of the data contained in such computer hardware, computer software, and/or memory storage devices to view the data and determine whether that data falls within the items listed in Attachment A;

b. searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items in Attachment A;

c. surveying various files, directories and the individual files they contain;

d. opening files in order to determine their contents;

e. scanning storage areas;

f. performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are likely to appear in the evidence described in Attachment A; and/or

g. performing any other data analysis technique that may be necessary to locate and retrieve the evidence described in Attachment A.

h. use of forensic software or hardware in order to by-pass a passcode protected or locked device, in order to either retrieve data from the device or obtain the passcode for the device itself.

## VIII.   INVESTIGATION AND PROBABLE CAUSE

### A. William Weekley is apprehended and indicted for violations of 18 U.S.C. 2251, 2252, and 2422(b).

30.     Larry McCoy is a Task Force Officer (TFO) with the FBI assigned to the Cincinnati Division and has been since February 2017. He is a Special Agent with the Ohio Bureau of Criminal Identification and Investigation (BCI), and is currently assigned to the Ohio

BCI Crimes Against Children Unit. He is also assigned to the FBI Child Exploitation Task Force, investigating matters involving the online exploitation of children and child pornography.

31.     As part of his duties as an Investigator with BCI and FBI, TFO McCoy initiated an undercover investigation to find and apprehend individuals involved in the online exploitation of children. On January 9, 2018, posing as a recently divorced father, McCoy posted an online ad entitled "Taboo Dad chat" on the Craigslist website looking to chat with others regarding "taboo stuff."

32.     McCoy received a reply email to the ad via the Craigslist email network from an individual later identified as William Weekley, and thereafter proceeded to communicate with Weekley via the Wickr app[4] regarding Weekley's sexual interest in minors. During these conversations, Weekley sent McCoy numerous photos of a white female, approximately ten to eleven years old (hereinafter "Jane Doe"), engaged in various sexual activities, including performing fellatio on a white male, lying on a bed with her legs open and her vagina clearly visible, performing fellatio on a black dog, and the dog licking her vagina.

33.     Weekley was arrested pursuant to a federal arrest warrant on January 17, 2018. During a post-arrest interview, Weekley admitted to engaging in sexual activity with Jane Doe and engaging in the Wickr conversation with TFO McCoy, in which he sent the sexually explicit phots of Jane Doe to McCoy. Weekley further admitted that he had also been communicating with people via Craigslist. Weekley was subsequently indicted on numerous charges, including violations of 18 U.S.C. §§ 2251, 2252, and 2422(b).

## B. Examination of Weekley's cellular phone reveals that he was communicating with others about his sexual abuse of Jane Doe and sending photographs of that abuse

34.     During the course of the interview of Weekley, a ZTE cellular phone was located within his place of employment, which Weekley eventually admitted was his. A search warrant was obtained for the phone, and a forensic examination of it was conducted.

35.     Portions of numerous email exchanges were found on Weekley's phone. The

---

4 Wickr is a messaging app that allows users to send end-to-end encrypted and content-expiring messages, that may include photo, video and other file attachments. A user can set the expiration time period for their encrypted communications, anywhere between three seconds and six days. Once the time period set by the user has been reached, the entire message is deleted and unrecoverable. Any content of communications that is stored by Wickr is encrypted and cannot be provided in an unencrypted format.

majority of these email exchanges appeared to be related to craigslist ads that Weekley had posted or responded to and involved discussions of various types of sexual activity, including Weekley's sexual activity with Jane Doe. The email address that Weekley used during these communications was williamweekley1212@gmail.com, which is the same email address that he utilized to communicate with TFO McCoy. No e-mails prior to early-January of 2018 were recovered from the phone.

36. On March 27, 2018, a search warrant was served on Google, Inc. for the content of the account related to Weekley's email account, williamweekley1212@gmail.com. The results of that search warrant that were provided by Google largely mirrored the email content that was recovered from Weekley's ZTE cellular phone. Similar to the information found on Weekley's cell phone, however, there was no content available prior to mid-December of 2017.

37. Through comparison of Weekley's emails to information provided by Craigslist, as further described below, it was determined that Weekley engaged in a conversation about sexual activity with minors with the user of the email account colsbuckeye315@gmail.com.

38. Based on the nature of the emails found on Weekley's phone and in his gmail account, numerous subpoenas were issued to Craigslist to determine the nature of the ads Weekley placed and responded to and the email addresses with whom he communicated. Information received from Craigslist confirmed that, since at least May 2017[5] , Weekley was posting and responding to advertisements on the Craigslist website, and engaging in communications via the Craigslist email platform. Many of the ads that Weekley placed or to which he responded on Craigslist contained references to "taboo," "dirty" or "perv" things, which, based on Your Affiant's training and experience, are terms often used to indicate a sexual interest in minors. In particular, Weekley responded to Craigslist ads with the following titles: "looking for the very dark and kinky women"; "dirty emails"; "taboo"; and "perv guy."

39. The content of the ad to which Weekley responded that was titled "taboo" indicated that the person who posted the ad was interested in sexual topics related to "family, forced" and "K9 and more", that there were "No limits" and stated "minor or the better." The ad

---

5 The information provided by Jane Doe indicates that Weekley began sexually abusing her sometime in the summer or fall of 2017, and that sexual abuse involving a second unidentified male occurred during this same time frame. For this reason, records from Craigslist were only sought starting in May of 2017. In light of the nature of Weekley's activities in May of 2017, there is reason to believe that Weekley may have been communicating about his sexual interest in minors prior to May of 2017.

was posted by an individual utilizing the email account colsbuckeye315@gmail.com.
Information provided by Craigslist revealed that, in January of 2018, Weekley exchanged
numerous emails with the person who posted this ad via the Craigslist email network. As
indicated above, through comparison of the Craigslist post ID number for this ad and the emails
recovered from Weekley's email account, it was determined that the content of some of these
email exchanges was found on William Weekley's cellular phone and in the results of the search
warrant issued for his email account. The content of the emails that were able to be recovered
reveals that the user of the email account colsbuckeye315@gmail.com was interested in incest
and sexual activity with minors. Weekley informed colsbuckeye315@gmail that he had "messed
around" with his Jane Doe and that she was young. Weekley further described the specific sex
acts he had engaged in with Jane Doe. During the conversation, colsbuckeye315@gmail.com
asked Weekley what he had done with his daughter, and after Weekley explicitly stated what he
had done, colsbuckeye315@gmail.com replied "Damn that is hot. We wish we could join in on
something like that." Weekley and colsbuckeye315@gmail.com continued to discuss various sex
acts, and during this colsbuckeye315@gmail.com stated, "Well your situation is our dream," and
later, "We love the family thing and we also like young. We do share pics, just not right away.
Got a ton of videos of her being fucked bareback by strangers."[6] The emails from
colsbukeye315@gmail.com continue with him saying, "Do you think you'd ever let anyone else
join you? We really want to find some active family that we can join."

    40.    Further investigation of the email account colsbuckeye315@gmail.com revealed it
to be associated with Grant MICHALSKI at 221 N. Front Street # 105, Columbus, Ohio 43215.
On August 10, 2018, a search warrant was executed at 221 N. Front Street, # 105, Columbus,
Ohio. Grant MICHALSKI was at the residence at the time that it was executed, and, pursuant to
authorization provided in the search warrant, was required by law enforcement to place his face in
front of an iPhone X that was found on MICHALSKI's person when the search warrant was
executed. The phone was unlocked pursuant to the facial recognition feature on the iPhone X, and
your affiant was able to briefly review the contents of the phone. You affiant observed several
saved images in the "photos" album of a female holding a sign with the words "Taboo Mom
Ohio" written on it. From previous investigations your affiant is aware that those photos are used

_____

6 This reference to videos is unclear from the context whether colsbuckeye315@gmail.com was referring
to an adult or a child.

on a Kik Messenger profile that engages in conversations with other Kik users about a sexual interest in children. Additionally, a Kik account was located on the SUBJECT MEDIA with a user name of "Columbusbuckeye315" and a DropBox account registered to email address Michalski.26@gmail.com. Your affiant examined and documented a Kik conversation between Columbusbuckeye315 and a Kik user by the name of errick00021 that occurred on July 25, 2018. During the course of the conversation they discussed their mutual interest in sex with minors, bestiality and incest. A sample of the conversation is below:

> Columbusbuckeye315: We just now went through our mail on ML. We'd love to watch you fill your daughters panties with cum.
>
> \*\*\*
>
> Erick00021: Gotcha. What all are you guys into?
> Columbusbuckeye315: Incest!
> Erick0021: Awesome. I'll get a good video next time I play with her panties.
> Columbusbuckeye315: That's the biggest one. But anything dirty. K9, yng, forced... Yes Please
> Erick00021: Any Scat?
> Columbusbuckeye315: Nah that's our limit.
> Erick00021: Mmmmm. Do you guys do k9?
> Columbusbuckeye315: We want to.
> Erick00021: Own a dog?
> Columbusbuckeye315: What all have you done?
> No
> We both have incest experience from when we were young.
> Erick 00021: Just invest and k9. Love age play too.
> Incest.
> Columbusbuckeye315: Yea
> Young daughters are awesome.
>
> \*\*\*
>
> Columbusbuckeye315: . . . How about you and your daughter?
> Erick00021: Just used her panties and bras. Don't have any pics of her on my phone though.
> Columbusbuckeye315: You ever think about fucking her?
> Erick00021: Oh yeah.
> Columbusbuckeye315: That would be hot as fuck. How old is she?
> Erick00021: She's 14.
> Columbusbuckeye315: Mmmmmm
> I'd be cumming in her all day.

13

41. An Apple MacBook was also seized from Michalski's bedroom during the execution of the search warrant at his residence. A forensic examination of the MacBook revealed that the associated email address for the laptop was Michalski.26@gmail.com. The exam revealed approximately 1400 images and 100 videos of child pornography saved to the hard drive of the laptop.

42. A search warrant was also issued to Google for information and contend related to the account colsbuckeye315@gmail.com. Information provided by Google pursuant to that search warrant revealed that the user name associated with the account is G M and the recovery email address is michalski.26@gmail.com. A review of the returned content analyzed to date shows that MICHALSKI has posted or responded to online ads on the Craigslist website with the following subject headings within the last year: "16 yo anal virginity," "daddy mommy looking," "dark taboo," "into taboo," "looking for a mom into extreme taboo," "looking for taboo and kinky," "love taboo," "love taboo sex," "men obsessed with incest with mom and dad," "mommy daddy," "osu son obsessed with dad son incest," "perv looking for perv," "social incest," "taboo 16 yo," "taboo," and "young incest." A review of these communications revealed that MICHALSKI made repeated statements of his interest in seeing pictures of minor children engaging in sexual activity, and his interest in engaging in sexual activity with minor children. Specifically, the communications contain MICHALSKI's repeated statements that he is interested in "incest" and participating in incestuous relationships that involve minor children.

43. For example, in January of 2018, MICHALSKI participated in an email exchange with an individual who posted a Craiglist ad with a subject of "taboo." In the course of that exchange, the poster of the ad stated that he was "30" and had "a younger daughter." MICHALSKI asked if the poster was sexually active with his daughter, to which the poster responded, "Yeah she is 11 now." MICHALSKI responded, "That's hot! We'd love to be able to join. What kind of stuff do you guys do?" The poster responded as follows: "Maybe if we hit it off lol. We been playing but nothing too crazy yet. Trying to go slow about it but it's hard. What would you want to do?" MICHALSKI responded, "We'd love to be able to taste her." When the poster responded, "Love to see that," MICHALSKI said, "We have to get together sometime." MICHALSKI again asked the poster what he and his "daughter do." The poster said, "Just toy play so far. I buy the smallest ones I can find. Been going slow and seems to be working fine lol. You played with any younger?" MICHALSKI responded as follows: "I but we've been dying too. We talk about it all the time. She likes the thought of us taking turns eating a young girls

14

pussy and ass together at the same time. We gotta meet up sometime. If you got Kik we can chat there."

      44.      During the course of the investigation into MICHALSKI's various user names, it was discovered that, in April and May of 2017, MICHALSKI, utilizing the Kik user name columbusbuckeye315, responded via Kik to a Craigslist ad posted by undercover law enforcement officer. Relevant portions of the Kik conversation that MICHALSKI and the undercover officer engaged in are as follows:

| | |
|---|---|
| Columbusbuckeye315: | Are you active with your kids. Would love to join on that. |
| Undercover: | I am |
| Columbusbuckeye315: | Ever have anyone join in? |
| Undercover: | One guy about a year ago but that's it |
| Columbusbuckeye315: | Do you have a daughter? Would you let me have fun with her? |
| Undercover: | I have 2 |
| Columbusbuckeye315: | Even better. Been my fantasy to have a mom and a daughter together. |
| Columbusbuckeye315: | If you have a son that would be fun to have him join in as well |
| Undercover: | Do you have any children? |
| Columbusbuckeye315: | None unfortunately |
| Columbusbuckeye315: | Although I want to some day and have fun with them like you do with yours. |

      45.      Later in the Kik conversation columbusbuckeye315 stated, "I'm not trying to rush or anything. But just want to make sure you know I'm for real about meeting up."

      46.      Google searches for the email account colsbuckeye315@gmail.com and the variant of colsbuckeye315 returned an account of the same name on the website motherless.com, which your affiant knows is frequently used as an online communication forum for those who are interested in sexual activity with minors. The colsbuckeye315 motherless.com account was no longer active. However, based upon further investigation, Your Affiant determined a connection between colsbuckeye315@gmail.com/colsbuckeye315 and an active motherless.com profile/account under the username colsfreakcpl. Images and videos of what appear to be various adult males engaged in sexual activity with an adult female were located on the profile page for this account on motherless.com. The profile has a title of "Incest is best!" and indicates that the user of the account is a couple that is into "taboo", "young" and "incest".

      47.      In August of 2018 a search warrant was served on www.Motherless.com for all information and content relating to motherless account colsfreakcpl. Www.motherless.com

responded by providing all content for the requested account which included "chat" or "private message" conversations between colsfreakcpl and other motherless users.

48.     The information provided by Motherless in regards to the colsfreakcpl account joined Motherless in March of 2016, had last logged in on July 24, 2018, and had uploaded 22 photos or videos. The email address associated with the account was colsbuckeye315@gmail.com, which, as indicated above, is one of Grant MICHALSKI's email accounts. Your affiant reviewed all of the private message conversations that MICHALSKI engaged in on the Motherless website and found the majority to involve his interest in incest and sexual activity with minors, attempts to meet with others to engage in such sexual activity, and his requests for advice on how to find a woman who was interested in incest and sexual activity with minors. In many of his conversations, MICHALSKI directed those with whom he was communicating to contact him via the Kik application. For example, your affiant reviewed the following communication that were located in MICHALSKI's Motherless.com account:

    a. In August of 2016, MICAHALSKI sent Motherless user SatansFatPig666 the following message: "I don't know if you'd call 230 fat but I'm definitely not skinny. I think whatever I lack in weight I more than make up for by being a filthy nasty pervert. Id be a sex offender except I'm too good to get caught."

    b. In July of 2016, MICHALSKI engaged in an ongoing conversation with Motherless user Eddiec1975. During the course of the conversation they exchanged the following messages:

        Colsfreakcpl: Hey, just stumbled across your profile and I love it. I think incest, especially young is the hottest thing ever. You're a lucky guy and I'm very jealous. I hope I can have what you have someday. I'm still working on finding someone who wants to have an open family. How did you and your daughter first start?

        Eddiec1975: Around 9 years old she started kissing me on the lips and then would lay with me in bed. She would spoon with me n only her panties and a tshirt with me n my boxers. I started by sliding my dick between her ass cheeks and slide it between her legs rubbing the head of it against her little pussy. I got a little carried away and my dick slid into her pussy and popped her cherry. Ever since then she comes to daddy. She is now 15

        Colsfreakcpl: Wow you're a lucky guy to have that happen with your daughter. I think they are so hot at that age, I can see how you could get carried away and slip it in her. I can only hope the same happens for me someday ... I have managed to get to know one family here in Columbus that is kinda

mentoring me on all of this. The dad says he'd love to set me up with one of his daughters but she's stuck on some loser BF. Do you have Kik or anything? I'd love to keep chatting. I really want to get to know more people who are local and may want to meet up someday.

Colsfreakcpl: Also I can share pics of my girl cousin I want to fuck. The time she fucked a guy in front of me I actually took a video but I felt bad and deleted it after (she didn't know I took it). ...

Colsfreakcpl: Message me on kik. ColumbusBuckeye315. Or we can text if you don't have kik.

In a subsequent messages in August and December of 2016, respectively, that Michalski sent to Eddiec1975, MICHALSKI stated:

So I met a girl that's nearby and comes from an incest family. She's 22 and petite and loves young girls and boys. Would you and your daughter be interested in playing with us?

Hey what's up? Been a while since we talked. How's things? How's everything with you and your daughter? Get any young pussy lately? I may have something lined up here soon. Found a girl with a younger friend and both are into k9 too.

c. In August of 2016, MICHALSKI began communicating with Motherless user OHgirl3442. Based on the timing and the nature of their communications, your affiant has reason to believe that OHgirl3442 is the 22 year old female that MICHALSKI referenced in his August 2016 message to Eddiec1975. The conversations between MICHALSKI and OHgirl3442 involved her ongoing sexual activities with her father, which started when she was a minor, MICHALSKI's sexual interest in his adult cousin, and OHgirl3442's sexual activities with her minor nephew and other young children that she babysat. During a conversation about the two-year-old child that OHgirl3442 had just begun babysitting, the following exchange occurred:

Colsfreakcpl: So did you ever get to babysit for your friend that was going back to work? Get to play with her daughter?

OHgirl3442: I have been watching her for the past 2 weeks so far everything is going great. She has fun hanging out naked here at the house with me an dad. We have not really done anything sexual at least not directly she does sit on my dads lap right on his dick an never has complained about it even when he gets hard she has even touched it a few times not in a sexual way just putting her hands on it getting in an out of his lap. . . .

17

Colsfreakcpl: That sounds so hot . . . I've done something similar with a couple I know that comes to town every once in a while. They usually have their young daughter with them. Last time I played with them the wife held her daughter because she was being fussy and wouldn't fall back asleep. While she was laying down holding her I got between her legs and started eating her out and then slid inside and fucked her all while the daughter was asleep between us and of course the husband/dad watching. So what's the next step for her? Start to finger her during bath time or something? Which I got to have fun like that.

49.     As indicated above, the SUBJECT DEVICE was seized pursuant to a federal search warrant executed at MICHALSKI's residence on August 10, 2018, and was unlocked via Apple Face ID, pursuant to the search warrant. Thereafter, the SUBJECT DEVICE was transported to the FBI Columbus Resident Agency located at 425 W. Nationwide Blvd, Columbus, Ohio 43215. Because the SUBJECT DEVICE was unlocked only by Face ID and the passcode was unknown, a forensic extraction was not possible on the SUBJECT DEVICE. Your affiant placed the SUBJECT DEVICE in airplane mode and examined it by looking through the files and folders manually and documenting the findings with pictures. At the conclusion of the exam, the SUBJECT DEVICE was secured in the FBI evidence room located at the Columbus office.

50.     During the course of the manual examination of the SUBJECT DEVICE, your affiant was not able to review all information contained in the phone and all of its applications before it locked. Once the SUBJECT DEVICE locked, your affiant was not able to unlock it again because the passcode is unknown. Additionally, because only a manual examination rather than a forensic extraction was performed, no deleted data was obtained. Given the nature of the information that was observed on the SUBJECT DEVICE and the indications from MICHALSKI's motherless.com and email communications that he was directing communications about sex with minors to Kik and text communications, your affiant has reason to believe that a forensic extraction will recover such communications and/or related visual depictions. Your affiant has recently learned that both the Columbus Police Department and the Ohio Bureau of Criminal Investigation and Identification have technological devices that are capable of obtaining forensic extractions from locked iPhones without the passcode. Your affiant believes that utilization of such technology may provide evidence from the SUBJECT MEDIA of MICHALSKI's child pornography and child exploitation offenses.

## XI. CONCLUSION

51.    Based on the forgoing factual information, your affiant submits there is probable cause to believe that violations of 18 U.S.C. §§ 2252, 2252A and 2422(b) have been committed, and evidence of those violations is located in the SUBJECT MEDIA.  Your affiant respectively requests that the Court issue a search warrant authorizing the search of the SUBJECT MEDIA and the seizure of the items listed in Attachment A.


David A. Knight
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me this _____ day of September 2018.


Elizabeth Preston-Deavers
United States Magistrate Judge
United States District Court, Southern District of Ohio

19

## ATTACHMENT A
## LIST OF ITEMS TO BE SEIZED

The following materials which constitute evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use or which is or has been used as the means of committing a criminal offense, namely violations of Title 18, United States Code, Sections 2252, 2252A and 2422(b).

The terms "child pornography" and "visual depictions," as used herein, have the same definitions and meanings listed in Section III of the attached affidavit, and those definitions are incorporated herein by reference.

1. Any and all computer software, including programs to run operating systems, applications (such as word processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communications programs.

2. Any and all notes, documents, records, or correspondence, in any format and medium (including, but not limited to, letters, e-mail messages, chat logs, electronic messages, other digital data files and web cache information) pertaining to the production, possession, receipt, or distribution of child pornography.

3. In any format and medium, all originals, computer files, copies, and negatives of child pornography or child erotica.

4. Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, letters, e-mail messages, chat logs and electronic messages), identifying persons transmitting, through interstate or foreign commerce by any means, including, but not limited to, by U.S. mail or by computer, any child pornography.

5. Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, e-mail messages, chat logs and electronic messages, and other digital data files) concerning communications between Grant Michalski and any other individuals related to the sexual abuse or exploitation of minors.

6. Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, letters, e-mail messages, chat logs and electronic messages, and other digital data files) concerning communications between individuals about child

pornography, or the existence of sites on the Internet that contain child pornography or that cater to those with an interest in child pornography.

7. Any and all files, documents, records, or correspondence, in any format or medium (including, but not limited to, network, system, security, and user logs, databases, software registrations, data and meta data), that concern user attribution information.

8. Any and all visual depictions of minors, whether clothed or not, for comparison to and identification of any child pornography images or videos discovered.

**ATTACHMENT B**

**DESCRIPTION OF ITEMS TO BE SEARCHED**

1) **Apple IPhone X with model # A1865 and an unknown serial number** that was taken off of Grant Michalski's person during the execution of a search warrant at 221 N. Front Street, Apartment 105, Columbus, Ohio 43215.